**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO SUPPRESS** |
| vs. | ) | |
| | ) | |
| Kimhong Thi Le, | ) | Case No. C1-05-002 |
| | ) | |
| Defendants. | ) | |

Before the Court is the defendant, Kimhong Thi Le's Motion to Suppress Evidence filed on August 26, 2005. The motion to suppress relates to evidence seized by law enforcement officers on February 11, 2004. The Government has filed a response resisting the motion. An evidentiary hearing was held on November 8, 2005, in Bismarck, North Dakota. For the reasons outlined below, the motion to suppress is denied.

**I.   BACKGROUND**[1]

On February 9, 2004, an individual named Thanh Mai Truong, rented a 2004 Mitsubishi Endeavor SUV with Washington license plates at the Seattle-Tacoma Airport in King County, Washington. Four (4) black duffel bags belonging to the defendant, Kimhong Thi Le, were loaded into the vehicle later that day. See Kimhong Le's Affidavit Supporting Motion to Suppress (Docket No. 42). Each bag was approximately four feet long and two feet high and contained numerous

---

[1] It should be noted that the Court is familiar with the facts based on prior criminal proceedings involving Diana Courtney Duong. See Case No. C1-04-050. In that case, the Defendant filed a motion challenging the very same search that is the subject of the present motion to suppress; a motion the Court denied and which was not challenged on appeal. See United States v. Duong, 336 F. Supp.2d 967 (D. N.D. 2004).

sealed bags of marijuana. Kimhong Thi Le and an individual named Diana Courtney Duong began driving the SUV from Seattle, Washington, to Minneapolis, Minnesota. Id.

On February 10, 2004, while driving east bound on the interstate highway (I-94), the two women encountered severe winter in western North Dakota. Diana Duong, the driver of the SUV, lost control of the vehicle and went off the interstate highway into a snow-covered ditch on the south side of I-94. The SUV rolled onto its side, but neither woman was injured.

The next morning, on February 11, 2004, "East End Towing" in Dickinson, North Dakota, was contacted by a woman to have the vehicle removed. Sometime after 8:00 a.m. on February 11, 2004, an East End Towing tow truck was dispatched to recover the SUV at mile marker 32 on I-94.

That same day, North Dakota Highway Patrolman Will Vance began his shift at 8:00 a.m. and was driving east bound on I-94 between Belfield and Medora, North Dakota. The winter weather conditions caused the interstate highway in that area to be closed the previous evening. Trooper Vance believed the roads were still closed when his shift began at 8:00 a.m. that morning. He said the highway was glare ice and travel speeds ranged from 40-45 mph. At approximately 8:50 a.m., Trooper Vance came across the SUV lying in the south ditch of the east bound lane of I-94. The SUV was lying on its side approximately 40 feet from the highway. It appeared to Trooper Vance that the vehicle had slid off the road at a slight curve in the highway. Trooper Vance did not know precisely how long the vehicle had been there, but he suspected that it had gone off the road sometime the previous evening of February 10, 2004. Although the conditions had improved overnight, Trooper Vance still described the interstate as being in "very poor" condition and "extremely icy." There was no one at the accident site when the trooper arrived on

location. A license check revealed that the owner of the vehicle was "PT Holding Company" which led him to believe that the SUV was a rental or company vehicle.

Trooper Vance immediately contacted several entities to determine whether any accidents had been reported. He contacted the Billings County Sheriff's Department, the Stark County Law Enforcement Center, and other highway patrol officers that were on duty the previous evening. No one had received an accident report for the SUV. Trooper Vance then requested that State Radio contact East End Towing in Dickinson to have the vehicle impounded. Trooper Vance's decision to impound the vehicle was based on his belief that the vehicle constituted a hazard under the circumstances due to its close proximity to I-94 and the poor road conditions. Trooper Vance learned that East End Towing had already received a call from a person requesting that the vehicle be towed.

When the tow truck arrived at the scene, the East End Towing employee explained to Trooper Vance that the towing company was supposed to meet the owner/driver to obtain the keys to the vehicle. However, no one showed up to make the exchange at or near the site of the accident. The tow truck did not have enough cable to reach the SUV due to its distance from the interstate highway so another East End Towing employee was called for assistance.

Trooper Vance had initially decided to leave the vehicle after the tow truck arrived and conduct an inventory search later that same day in Dickinson. However, shortly after he left the scene of the accident, Trooper Vance met the other East End Towing employee on I-94 and, thereafter, the trooper decided to return to the scene of the rollover.

The SUV vehicle was turned upright by East End Towing around 10:33 a.m. on February 11, 2004. At that time, Trooper Vance checked the glove box of the vehicle for any documentation

to identify the owner.  The trooper was only able to locate a card from Budget Rent-A-Car which revealed no information other than a telephone number for the rental agency.  Trooper Vance then looked in the back seat of the SUV and noticed the back seats were folded down.   There were several large, black duffel bags and a suitcase located in the back seat area.  Neither the duffel bags nor the suitcase had any identification tags.  Trooper Vance decided to conduct a brief inventory search at that time.  Trooper Vance said he believed there was a need to conduct an inventory search before the SUV was taken from the scene by the towing company.  Trooper Vance said that if the owner/driver had arrived on location at the accident site, he would have allowed the owner/driver to take the luggage and bags from the vehicle.  However, no owner/driver had arrived on location despite the fact that someone (an unknown female) had agreed to meet the towing company with the keys.  Trooper Vance testified that it was "unusual" for no one to arrive and claim ownership of the car for 2½ -3 hours after the towing company had first been contacted.  The trooper said that he had no idea what was in the duffel bags and he had no suspicion the bags contained contraband.  Trooper Vance removed one of the large duffel bags, opened it, and found that it contained numerous sealed bags of marijuana.  Trooper Vance then removed the remaining duffel bags, all of which contained several hundred pounds of marijuana.

  Trooper Vance immediately contacted State Radio and other law enforcement officers to request assistance. Deputy Sheriff Pat Rummel arrived at the scene at approximately 10:52 a.m. Deputy Rummel helped carry the duffel bags to his patrol car because they were to large to fit in Trooper Vance's vehicle.  The SUV was towed away at approximately 11:26 a.m. and was taken to East End Towing in Dickinson, North Dakota.

4

Trooper Vance obtained a search warrant on February 12, 2004. Law enforcement officers conducted a complete search of the vehicle later that day. Although several calls went back and forth between East End Towing personnel and the owner/driver of the vehicle, no one ever showed up to claim an ownership interest in the vehicle on February 11, 2004, or at anytime thereafter.

On January 13, 2005, Le was charged in federal court with Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance. On August 26, 2005, Le filed the present motion.

## II.   LEGAL DISCUSSION

### A.   INVENTORY SEARCH

The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. The general rule is that the government must secure a warrant before conducting a search. United States v. Alberts, 721 F.2d 636, 638 (8th Cir. 1983). However, "[l]aw enforcement may search a lawfully impounded vehicle to compile an inventory list of the vehicle's contents without violating the Fourth Amendment." United States v. Rowland, 341 F.3d 774, 779 (8th Cir. 2003) (citing South Dakota v. Opperman, 428 U.S. 364, 376 (1976)). These searches can be conducted without a search warrant or probable cause. Rowland, 341 F.3d 774, 779. The inventory search exception to the warrant requirement was created because police are performing an "administrative or caretaking function rather than a criminal investigatory function when they impound an automobile." United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993). The impoundment of a vehicle for the safety of the property is a legitimate "community caretaking" function of the police. United States v. Petty, 367 F.3d 1009,

5

1011 (8th Cir. 2004). Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Colorado v. Bertine, 479 U.S. 367, 372 (1987).

The relevant inquiry is whether, under the totality of the circumstances, the inventory search was reasonable. Inventory searches will be considered reasonable if "conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion." United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993) (citing Opperman, 428 U.S. 364, 372; Bertine, 479 U.S. 367, 376; Florida v. Wells, 495 U.S. 1, 4 (1990)).

### 1.     THE IMPOUNDMENT

It is well-established that law enforcement officers can exercise discretion when deciding whether to impound a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987). "Some degree of 'standardized criteria' or 'established routine' must regulate such police actions, which may be conducted without the safeguards of a warrant or probable cause, to ensure that impoundments and inventory searches are not merely 'a ruse for general rummaging in order to discover incriminating evidence.'" United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004). Such a requirement does not mean that the decision to impound or inventory must be made in a "totally mechanical fashion." Id. An impoundment policy can allow "'some latitude' and 'exercise of judgment' by a police officer when those decisions are based on concerns related to the purposes of an impoundment." Id. (citing Florida v. Wells, 495 U.S. 1, 4 (1990)). Because it is not possible for police departments to have guidelines for every

impoundment situation, the absence of such mechanical rules will not necessarily make the impoundment unconstitutional. The defendant argues that the seizure was invalid because the Government failed to present evidence of a standard impoundment policy to guide the exercise of police discretion.

During the suppression hearing on November 8, 2005, the Government introduced an exhibit entitled "North Dakota Highway Patrol Policy Manual." A section of that Manual is entitled "Impoundment of Property and Evidence Control." See Exhibit No. 7. The stated purpose of that section is "[t]o establish guidelines for impounding and releasing property and maintaining the integrity of the evidentiary chain of custody." Section "K" of the Manual pertains to "Abandoned Motor Vehicles" and contains the following provisions:

> 1. Officers finding unattended motor vehicles on a highway right of way shall immediately start action to ascertain ownership through State Radio, by telephone, or in person; and if the vehicle is determined to be stolen, shall take custody immediately.
>
> 2. If the officer is unable to locate the owner of the motor vehicle and the vehicle has not been reported as stolen and is not in violation of section 24-03-23 NDCC and it has been unattended for a period of 48 hours <u>or constitutes a hazard</u>, the vehicle will be considered abandoned and will be impounded and moved to an authorized area for safekeeping.

(emphasis added).[2]

The testimony of Trooper Vance reveals that he made a good faith effort to follow these provisions of the Highway Patrol Policy Manual. He immediately contacted several local law enforcement agencies through State Radio to determine whether any accidents had been reported.

---

[2] The quoted portion of the North Dakota Highway Patrol Police Manual was in effect from April 1, 2003, to March 22, 2004. See Exhibit No. 7. The search in question took place on February 11, 2004. In the updated version of the North Dakota Highway Patrol Police Manual, effective beginning March 22, 2004, the section regarding "Abandoned Motor Vehicles" appears in Section "L" instead of Section "K" but contains the same language. See Exhibit No. 2.

North Dakota law requires that all accidents resulting in over one thousand dollars worth of damage be reported to state authorities. See N.D. Cent. Code § 39-08-09. A brief inspection of the vehicle revealed that the SUV roof had sustained a partially crushed hood and the body had sustained several dents. Trooper Vance testified that he has responded to 200-300 automobile accidents and that there was "no doubt" in his mind that the damage sustained was in excess of one thousand dollars.

It is undisputed that Trooper Vance was unable to locate the owner/driver of the SUV. In Trooper Vance's opinion, the vehicle constituted a "hazard" because of its location relative to the interstate highway. In his experience, other drivers have a tendency to help stranded vehicles in the winter. Due to the inclement weather, Trooper Vance believed that it would be dangerous to leave the vehicle in the ditch because other drivers may try to stop on the icy interstate highway to lend assistance. On the morning of February 11, 2004, the trooper reasonably believed the vehicle constituted a "hazard" and could create additional problems as a result of the icy conditions that existed at the time. Under North Dakota Highway Patrol policies and procedures, vehicles are to be towed when they constitute a "hazard."

Following North Dakota Highway Patrol procedure, Trooper Vance had the SUV vehicle impounded. It is undisputed that the decision to impound the vehicle was clearly not based on any suspicion of criminal activity. To the contrary, Trooper Vance had not even entered the vehicle when he made the decision to call East End Towing and have the vehicle recovered from the interstate highway and impounded. The trooper impounded the vehicle because it had been left unoccupied after an accident and constituted a hazard, nothing more. The record fails to reveal any

evidence that the impoundment and inventory search were undertaken simply to search for incriminating evidence.

The Court agrees that, in hindsight, the likelihood a hazard existed was minimized by the arrival of Trooper Vance and East End Towing at the scene of the accident on February 11, 2004, at approximately 8:50 a.m.  However, Trooper Vance's decision to impound the vehicle after 8:50 a.m. was reasonable based on the circumstances he was confronted with.  The Court finds that the North Dakota Highway Patrol Policy Manual provides sufficient "standardized procedures" for impounding vehicles so that Trooper Vance's decision to impound the SUV was reasonable based on the totality of the circumstances.  Finally, the Court finds that the officer's decision to impound the vehicle was based on legitimate caretaking concerns related solely to the purposes of an impoundment and, as such, does not run afoul of the Constitution.

### 2. **THE SEARCH**

A legitimate seizure does not automatically justify an unlimited search of the automobile. United States v. Wilson, 636 F.2d 1161, 1163 (8th Cir. 1980).  The scope of the inventory search that follows must also comport with the reasonableness requirement of the Fourth Amendment. An inventory search generally serves legitimate governmental interests of protecting the owner's valuables, protecting the police from false claims of theft or damage, and protecting the police from danger.  However, standardized inventory criteria, procedures, or routines must exist as a precondition to a valid inventory search.  "When the police follow standardized inventory procedures that impact all impounded vehicles in a similar manner and sufficiently regulate the discretion of the officers conducting the search, the reasonableness requirement of the Fourth

Amendment is satisfied." United States v. Marshall, 986 F.2d 1171, 1176 (8th Cir. 1993). Officers are allowed to "keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." Id.

During the course of an inventory search, law enforcement officers are permitted to open closed containers "only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle." Colorado v. Bertine, 479 U.S. 367, 376-77 (1987); see Florida v. Wells, 495 U.S. 1, 4 (1990). It is well-established that written inventory procedures are not an absolute requirement and that oral testimony is sufficient to establish such a police procedure. See United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004); United States v. Lowe, 9 F.3d 43, 46 (8th Cir. 1993).

The North Dakota Highway Patrol Policy Manual provides that "[o]fficers will conduct a detailed inspection and inventory of all impounded vehicles." See Exhibit No.1, ¶ (E)(2). Trooper Vance testified that North Dakota Highway Patrol officers are trained to open closed containers in the course of performing inventory searches. To that end, it was, and is, his common practice to open closed containers when conducting inventory searches. Trooper Vance testified that he does this to protect himself, the Highway Patrol, the towing company, and the owner. The four large duffel bags in question were each approximately four feet long. Trooper Vance said duffel bags of that size could contain almost anything. Under North Dakota Highway Patrol policy, the individual officer is accountable for all inventoried property. The duffel bags were large enough that they could have contained hazardous or dangerous materials, money, jewelry, guns, etc. A thorough inventory search, which included the opening of closed containers (the duffel bags), was

warranted to best safeguard the North Dakota Highway Patrol as well as the towing company, and such actions were in keeping with Highway Patrol standardized training which endorses such a practice.

In closing arguments, counsel for the Defendant argued that Trooper Vance admitted that he retains some discretion in deciding whether or not to open closed containers during inventory searches. The Defendant contends that such an admission taints Trooper Vance's decision to open the duffel bags in this case. This argument is based primarily on Colorado v. Bertine, 479 U.S. 367, 375 (1987). However, the United States Supreme Court has made it clear that officers may exercise some discretion in determining whether to open closed containers so long as that discretion is exercised according to standard criteria and is not based on a suspicion of criminal activity. See Florida v. Wells, 495 U.S. 1, 3-5 (1990). In other words, some degree of standardized criteria or an established routine must regulate police actions to ensure that impoundments and inventory searches are not simply a ruse for general rummaging to discover incriminating evidence.

Based on the evidence presented in this particular case, the Court is satisfied that Trooper Vance's decision to open the duffel bags was based on his overall experience with motor vehicle impoundments, his training, and his desire to conduct a "detailed" inventory in accordance with his training and standardized procedures employed by the Highway Patrol. There was no evidence presented that directly, or even indirectly, suggests that the decision to open the duffel bags was based on any suspicion of criminal activity.

In summary, the Court finds that Trooper Vance attempted in good faith to carry out North Dakota Highway Patrol impoundment and inventory search policies and procedures in a reasonable manner. Further, the Court finds that Trooper Vance evinced no investigatory motive at the time

he initially opened the zipped duffel bags which were sitting unlocked in the back seat of an unclaimed SUV. The Court is satisfied that there is no direct or indirect evidence of an investigatory motive on the part of Trooper Vance and that finding is critical in this case. The law allows Trooper Vance to keep his eyes open for incriminating evidence while conducting an inventory search and that is precisely what he did. The legal arguments raised by defense counsel were well-researched, well-reasoned, and raise legitimate questions concerning the impoundment and inventory search policies of the North Dakota Highway Patrol. However, the Court expressly finds that the impoundment of the SUV and the inventory search conducted were reasonable and pass constitutional muster.

The Court finds that the inventory search of the vehicle and the duffel bags was reasonable based upon the totality of the circumstances. The testimony of Trooper Vance supports the finding that the inventory search was conducted in accordance with standardized procedures and criteria adopted by the North Dakota Highway Patrol. In United States v. Marshall, 986 F.2d 1171 (8th Cir. 1993), the Eighth Circuit recognized that inventory searches conducted according to standardized police procedures are reasonable. Such procedures can be established by written documentation or by oral testimony. In this case, there existed reasonable regulations relating to inventory procedures, and the procedures employed by the North Dakota Highway Patrol and Trooper Vance were administered in good faith which satisfies the Fourth Amendment.

**B.    ABANDONMENT**

It is also well-established that even if an individual establishes a legitimate expectation of privacy in a piece of property, that expectation can later be abandoned. United States v. Tate, 821 F.2d 1328, 1330 (8th Cir. 1987) (citing United States v. Biondich, 652 F2d 743, 745 (8th Cir. 1981));

see Abel v. United States, 362 U.S. 217, 241 (1960).  A warrant is not required to conduct a search of abandoned property.  United States v. James, 353 F.3d 606, 615-616 (8th Cir. 2003) (citing United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997)).  In determining whether property has been abandoned the Court must look at the totality of the circumstances and consider the following factors: (1) whether the suspect denied ownership of the property; and (2) whether he or she physically relinquished the property.  United States v. Caballero-Chavez, 260 F.3d 863, 866-67 (8th Cir. 2001) (quoting United States v. Liu, 180 F.3d 957, 960 (8th Cir. 1999)).  Whether an abandonment has occurred is based upon the objective facts available to the investigating officers, and not on the basis of the owner's subjective intent.  Tugwell, 125 F.3d 600, 602.  In other words the Court should only consider the information available to the officer at the time the search was conducted.

On February 11, 2004, at approximately 8:50 a.m., the SUV was found in a ditch along the interstate highway (I-94) unoccupied and lying on its side.  East End Towing had been called by the supposed owner/driver of the vehicle and told of the vehicle's location.  The owner/driver was to meet East End Towing on I-94 or at the accident site with the keys.  However, neither the owner/driver nor anyone else ever met East End Towing employees at any location along the interstate highway, nor did anyone arrive at the site of the accident between the time the call was made to East End Towing and when the vehicle was removed from the ditch.  The undisputed evidence clearly reveals that Trooper Vance was at the accident site for nearly two hours (8:50 a.m. - 10:33 a.m.) with no sign of an owner/driver/occupant before the vehicle was placed in an upright position and he undertook an inventory search of the vehicle.  As previously noted, the vehicle was first found by Trooper Vance at 8:50 a.m. on February 11, 2004.  The trooper and the towing company left the accident scene around 11:26 a.m.  It is undisputed that Trooper Vance was actually at the accident site for a total of more than 2½ hours (8:50 a.m. - 11:26 a.m.) and no owner/driver or occupant ever showed up.  Based

on the totality of the circumstances known to Trooper Vance that morning, it reasonably appeared that the SUV had been abandoned, and likely due to the contraband contained in the vehicle. The Court finds that based on the objective facts available and known to Trooper Vance during the morning of February 11, 2004, it was reasonable for the trooper to assume that the vehicle had been abandoned and that the SUV needed to be impounded and inventoried.

Even if the Court had concluded that Trooper Vance's inventory search was unreasonable based upon the totality of the circumstances, the Court expressly finds that the SUV was abandoned the morning of February 11, 2004. All of the objective facts known to Trooper Vance on February 11, 2004, support such a finding and the admission of the evidence seized.

The defendant, Kimhong Thi Le, had a legitimate expectation of privacy in the vehicle and its contents at the outset, but that expectation of privacy was lost when 1) the vehicle was abandoned in a ditch along the interstate highway throughout the morning of February 11, 2004, particularly after a call was made to East End Towing and arrangements made to meet the towing company with the keys, 2) the defendant, or the owner/driver, failed to communicate in any manner with state authorities as required by law, 3) the defendant, or the owner/driver, failed to communicate in any manner with the towing company after approximately 8:00 a.m. and after indicating that someone would meet the towing company that morning with the keys to the SUV, and 4) the defendant, or the owner/driver, failed to rendevous with East End Towing as arranged and travel to the site of the rollover to facilitate the towing of the vehicle. It was reasonable for Trooper Vance to assume that the vehicle had been abandoned under the circumstances – despite the poor weather conditions that morning. The evidence in the record demonstrates that the SUV was abandoned the morning of February 11, 2004, when it became readily apparent to Trooper Vance that no owner/driver/ occupant intended to present herself

to claim an ownership interest in the vehicle or its contents, and no effort was made to further communicate with the towing company.

### C.   NORTH DAKOTA CONSTITUTION

Article 1, Section 8 of the North Dakota Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.

The North Dakota Supreme Court has recognized that Article 1, Section 8 is "almost identical" to the Fourth Amendment.[3] State v. Rydberg, 519 N.W.2d 306, 310 (N.D. 1994). While it is well-established that the North Dakota Constitution may afford greater protections than those granted under the United States Constitution, there is nothing to suggest that Article 1, Section 8 is too be read more broadly than its federal counterpart for purposes of the inventory search exception to the warrant requirement. Thus, the Court's finding that the inventory search was valid under Fourth Amendment also satisfies Article 1, Section 8 of the North Dakota Constitution.

### III.   CONCLUSION

For the reasons outlined above, the Court **DENIES** the Defendant's Motion to Suppress Evidence (Docket No. 37).

---

[3]The Fourth Amendment of the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

15

**IT IS SO ORDERED.**

Dated this 28th day of November, 2005.

                                        Daniel L. Hovland, Chief Judge
                                        United States District Court